JAMES AITKEN, RESPONDENT, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, APPELLANT.

Submitted January 17, 1939—Decided May 11, 1939.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellant, *Drewen & Nugent* (*John Drewen*, of counsel).

For the respondent, *Charles A. Rooney* (*Gustave A. Peduto*, of counsel).

The opinion of the court was delivered by

PARKER, J.   This is a suit on two life insurance policies issued by the defendant-appellant, and based on a clause of extra indemnity for death by accident. The relevant language of the policies is as follows: "Upon receipt of due proof that the insured * * * has sustained bodily injury, solely through external, violent, and accidental means * * * and resulting directly and independently of all other causes, in the death of the insured. * * * No accidental death benefit will be paid * * * if death is caused or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity * * *."

The case was tried without jury, and the judge as the trier of facts as well as law, found for the plaintiff beneficiary named in the policies for the amount of "accidental death benefit," the ordinary death claim having been paid. This necessarily involved a finding of fact by the trial judge that the death of the deceased had occurred under circumstances satisfying the language of the policy above quoted; and the sole point raised on this appeal is that there was no such evidence. There are four specifications of causes for reversal which read as follows

"1. The trial court erred in denying defendant's motion for a direction of verdict at the conclusion of the entire case.

"2. The trial court erroneously, and without any evidence whatsoever in the case to support it, found that the insured had sustained bodily injuries solely through external, violent and accidental means, which resulted directly and independently of all other causes in the death of the insured.

"3. The trial court erroneously, and without any evidence whatsoever in the case to support it, found that the insured met her death through external, violent and accidental means, directly and independently of all other causes

"4. The trial court erroneously, and without any evidence whatsoever in the case to support it, entered judgment in favor of plaintiff and against the defendant."

The first specification is technically inappropriate to a case in which there was no jury, although accurate as regards the motion that was in fact made at the conclusion of the evidence in the District Court. The phrase "direction of verdict" has recently been criticized by this court as inept as regards the disposition of a case tried without jury. *River Park Homes Corp.* v. *Hammond*, 120 *N. J. L.* 519 (at *p.* 521). But as in that case, we are content to treat the motion at the trial and the specification here as referring to the refusal of the trial court to render judgment for the defendant on one or both of the grounds set up in specifications 2 and 3.

Specification 4, as appears, challenges the positive action of the court in rendering a judgment for the plaintiff.

The meritorious question, therefore, to be determined on this appeal is whether there was adduced at the trial any evidence which would support the finding by the trial judge that death occurred under circumstances satisfying the quoted condition of the policy, as this court on appeal from the District Court has no power to review findings of fact. *R. S.* 2:32-202; *Burr* v. *Adams Express Co.*, 71 *N. J. L.* 263; *Baldwin* v. *Golden Star Fraternity*, 47 *Id.* 111 (for the statute referred to in that case see Revision 1877, page 1330, section 171); *Ellis Co.* v. *Eyth*, 69 *Id.* 579; *Phelps* v. *Seymour*, 70 *Id.* 626; *Buckley* v. *Ellsworth Camp, &c.*, 93 *Id.* 450. The evidence at the trial to support the case for the plaintiff, it should be stated, was meagre and unsatisfactory; and if we were reviewing a verdict on the ground that it was against the weight of evidence we should doubtless feel impelled to set aside that verdict. But the case before us does not involve the weight of evidence. As already noted, it involves simply the question whether there was legal evidence to support the finding; and in this respect closely resembles the case of *McNamara* v. *Metropolitan Life Insurance Co.*, 117 *Id.* 323, in which case, as here, the trial judge sat without jury and the same motion for "direction of verdict" was made. The case for the plaintiff rested in large measure upon the lan-

guage of an official death certificate, a certified copy of which was received in evidence expressly without objection.

The statute (*R. S.* 2:98-14) provides in part that "any transcript of return of death, marriage or birth, made by any person according to law, to any officer or board empowered by law to receive the same or of the record of such return, such transcript being a copy of the return as originally made or a copy of the record thereof as recorded according to law, when such transcript shall be signed by the officer required by law to return or record the same as the case may be and, by him certified to be a true copy of said return or record, shall be received as *prima facie* evidence of the facts therein stated in all courts and places."

By *R. S.* 26:6-7 the certificate of death is to contain certain items, and particularly item 20, Cause of Death. The second paragraph of this item reads: "Causes of death which may be the result of either disease or violence shall be carefully defined; and if from violence, the means of injury shall be stated and whether [probably] accidental, suicidal, or homicidal."

Turning to the certificate, *Exhibit P-4*, under the heading "cause of death" the entry is "accidental injuries. Received from fall from ladder." There was some medical testimony pointing to a probable cerebral hemorrhage coupled with coronary occlusion, as having caused death. Apart from the certificate, there is no evidence whatever of a fall from a ladder, or that deceased was even on a ladder. The deceased Mrs. Aitken, wife of the plaintiff, was a working woman and the story told by a Mrs. Whalen, a witness for plaintiff, was that one day Mrs. Aitken was engaged in washing a window about seven feet above the ground, sitting as women do under those circumstances on the window sill with her feet inside the house and her body outside. According to Mrs. Whalen, they exchanged a few words and then Mrs. Aitken raised the window and got off the window sill inside the room and turned around to talk with Mrs. Whalen through the window when suddenly she seemed to stagger, and fell. Mrs. Whalen ran into the house and Mrs. Aitken was picked up in a sort of semi-conscious condition and water was thrown in her face

and she said her head hurt her, as it naturally would if she fell backwards on the floor. Subsequently, Mrs. Aitken was taken to the Jersey City Hospital, and died there.

In *Shopp* v. *Prudential Insurance Co.,* 115 *N. J. L.* 162, the Court of Errors and Appeals held that the proofs were insufficient to support a finding of death by drowning; but in that case apparently no certificate of death, or certified copy, was put in evidence. The same court over thirty years ago, in *Vanderbilt* v. *Mitchell,* 72 *N. J. Eq.* 910 (at *p.* 914), said: "It is important to note that the legislature evidently had not in mind the possibility that this statutory record might be made an instrument to effectuate a fraud;" and held that the Court of Chancery had jurisdiction on a proper state of facts, to correct such fraud by cancellation or reformation of the certificate; in that case, of a birth. But while a certificate stands, not directly impeached, courts of law are to respect the legislative mandate, and recognize it as evidence. That mandate is that it shall be *prima facie* evidence of the facts therein stated; and, as remarked in *Vanderbilt* v. *Mitchell, supra* (at *p.* 913), "unless attacked by competent evidence [it] becomes conclusive to prove the facts therein recorded."

The phrases *"prima facie* case" and *"prima facie* evidence" have been considered in many adjudications in different jurisdictions. 23 *C. J.* 9, § 1735; 49 *C. J.* 1346-7. In *Potts* v. *Pardee,* 220 *N. Y.* 431; 116 *N. E. Rep.* 78, the presumption of principal and agent arising from ownership of an automobile involved in an accident, growing out of a *"prima facie* case" was held to remain "only so long as there is no substantial evidence to the contrary; and when that is offered the presumption disappears," and without further proof there is nothing to justify a finding based solely upon it. But in this state the Court of Errors and Appeals has spoken in *Polhemus* v. *Prudential Realty Corp.,* 74 *N. J. L.* 570 (at *p.* 580), opinion by the late Judge Green. There, the plaintiff rested with a *"prima facie* case." Defendant offered no proof *contra;* and the court held that a direction for plaintiff was proper. What control the trial court should have exercised in case defendant had produced evidence in contradiction, the appellate court did not say. But innumerable cases in

our reports, and we think the plain implication in Vanderbilt v. Mitchell, indicate that *prima facie* evidence is not, as a court question, necessarily nullified by counter evidence, however strong, so as to require control of a verdict by the trial court. It is held by our court of last resort that the "scintilla" rule does not prevail in this state. *Pellington* v. *Erie Railroad Co.,* 115 *Id.* 589; *Sivak* v. *New Brunswick,* 122 *Id.* 197. The rule as stated in the headnote to the Pellington case is: "The power of a judge to order a nonsuit or direct a verdict, does not depend upon the absence of all testimony in opposition to the case in favor of which the ruling is made, but the test is whether there is any testimony from which the jury can reasonably conclude that the facts sought to be proven are established." But it will be observed that it is a power and not a duty that is vested in the judge. As a finder of fact sitting without jury, he would obviously have been legally justified in finding for defendant; and it may well be that he would have been justified in finding for defendant as on a direction to a jury, or in nonsuiting, even apart from section 167 of the District Court act of 1898, now *R. S.* 2:32-122; but we find ourselves unable to hold that legal error was committed by a refusal to find for defendant, and a counter-finding, sitting as trier of facts, for the plaintiff.

We have not overlooked the fact that to support a recovery it must appear that death resulted from accident independently of all other causes; but the official certificate stating "cause of death" as "accidental injuries received from fall from ladder" without more, should, under the maxim *expressio unius est exclusio alterius* be normally construed as indicating no contributing cause, particularly in view of the statutory provision above quoted, that "causes of death which may be the result of either disease or violence should be carefully defined."

We conclude, therefore, that a proper application of relevant legal principles requires an affirmance of the judgment under review.